UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CONSOLIDATED EDISON
COMPANY OF NEW YORK, INC.,

                          Plaintiff,

-against-

ROBERT S. CANTOR,

                          Defendant.

---

18-cv-02267 (NSR)

OPINION AND ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Consolidated Edison of New York, Inc. ("Plaintiff or Con Edison") filed a Complaint on March 14, 2018 seeking specific performance of its September 27, 2017 written agreement with *pro se* Defendant Robert S. Cantor ("Defendant" or "Cantor"). (ECF No. 1). The agreement pertained to the conveyance of a permanent underground utility easement grant at Cantor's investment property located at 218 Saw Mill River Road in Greenburgh, New York. (*Id.*) Presently before the Court is Plaintiff's Motion for Summary Judgment in its entirety, pursuant Fed.R.Civ.P. 56. (ECF No. 26.) For the following reasons, the Plaintiff's Motion is GRANTED.

### FACTUAL BACKGROUND

The Court presumes the truth of Plaintiff's uncontroverted 56.1 statement from which it derives the following facts. *See Galindo v. Instalaciones de Tendidos Telefonicos*, S.A., 508 F. App'x 76, 79 (2d Cir. 2013).[1]

Plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of New York. Defendant was and is a resident of Westport, Connecticut. Defendant is a

---

[1] As Defendant did not submit a Rule 56.1 statement, the Court reviewed Defendant's affidavit to see whether he controverted any material facts and he found that he did not. *Turner v. Sidorowicz*, No. 12-CV-7048 (NSR), 2016 WL 3938344, at *1 (S.D.N.Y. July 18, 2016).

1

licensed real estate broker in Connecticut. Since in or about March 2000, Defendant was and continues to be the owner in fee of real property at 218 Saw Mill River Road in Greenburgh, New York, which is commercial investment property.

On December 9, 1971, J. & L. Rinaldi Holding Corporation, the owner of 218 Saw Mill River Road ("the Property") at that time, granted a renewable temporary easement to Con Edison that permitted it to maintain underground electric transmission lines at the Property. In 2015, Con Edison offered to buy from Defendant a permanent easement that would permit Con Edison to continue to maintain underground electrical transmission lines at the Property.

From 2015 until February 2018, Thomas A. Toscano, Esq., of Toscano & Associates, represented Cantor in responding to Con Edison's offer to buy the permanent easement. From 2015 to date, Con Edison has been, and continues to be, represented by attorneys Scott A. Levinson, Michael S. Davi, and Diep Nguyen in Con Edison's offer to buy a permanent easement from Cantor.

When the parties, through counsel, could not agree on the price for a permanent easement, they sought the assistance of a mediator. The parties retained the Honorable Abraham G. Gerges as their mediator. Justice Gerges is a retired Justice of the New State Supreme Court. As the presiding judge in the Kings County condemnation part, Justice Gerges authored decisions on the value of condemned properties. Before the mediation, the parties exchanged appraisals and mediation statements.

On September 27, 2017, both parties appeared for the mediation at the offices of Mr. Toscano with their respective counsel and appraisers. With Justice Gerges's assistance, the parties agreed on $225,000 as the price for the permanent easement and executed the September 27, 2017

Agreement (the "Agreement"). Mr. Toscano drafted the September 27, 2017 Agreement. The Agreement states, among other things, that:

> Payment shall be made by ConEd to Cantor within a reasonable time from the date hereof, but not later than December 31, 2017, or this agreement shall then be null and void.
>
> In the event some other or further, or more formal, documents is required to be executed by the parties hereto, the parties hereto agree to move quickly to develop and executed [sic] said documents by the date referenced above.
>
> Cantor shall provide consents to the permanent easement, or a subordination agreement, from any party with a superior interest.

(Davi Decl. Ex. 2, September 27, 2017 Agreement (the "Agreement"), ECF No. 1-1.)

At all times since September 27, 2017, Con Edison has had sufficient funds available to pay $225,000 to Cantor for the permanent easement. After the mediation, Con Edison obtained an updated title report on 218 Saw Mill River Road. The updated title report showed an outstanding mortgage to HSBC Bank USA, N.A. recorded against the property. On October 5, 2017, Ms. Nguyen sent Mr. Toscano an email attaching the updated title report and stating in pertinent part:

> We obtained an updated title report recently on 218 Saw Mill River Road. As you can see from the attached report, it appears that there is currently a mortgage on the land (p. 14), and there is no indication that the mortgage has been satisfied. I think you told us at the mediation that the property is free of encumbrances? If so, please provide us the necessary documents. . . .

(Davi Decl. Ex. 5, ECF No. 28-5.)

On October 19, 2017, Mr. Toscano sent Ms. Nguyen an email responding to her October 5, 2017 email, and stating in pertinent part:

> I found out from my Client that HSBC was paid off. I am getting a duplicate Satisfaction of Mortgage for recording. I should have it in a week. Let's proceed on that understanding.

(Davi Decl. Ex. 6., ECF No. 28-6.)

On November 1, 2017, Ms. Nguyen sent Mr. Toscano an email stating in pertinent part:

3

> Please provide us copies of the Satisfaction and Recording when you have both. We will send you updated easement shortly.

(Davi Decl. Ex. 7, ECF No. 28-7.)

On November 12, 2017, Ms. Nguyen sent Mr. Toscano an email attaching a revised draft of the formal easement documents, and stating in pertinent part:

> Attached for your review are the following: (1) easement grant; (2) survey; (3) legal description; and (4) NY TP-584 form. Please review and let me know if you have any questions. We will send you the transfer tax form once it is final.
>
> Have you received and recorded the Satisfaction? If so, please provide us with the necessary documentation. . . .

(Davi Decl. Ex 8, ECF No. 28-8.)

As of November 12, 2017, subject to Cantor recording a duplicate satisfaction of the HSBC mortgage, Con Edison was ready, willing, and able to proceed with the acquisition of the permanent easement grant. On November 28, 2017, Mr. Levinson sent Mr. Toscano an email, responding to Ms. Nguyen's November 12, 2017 email, asking Mr. Toscano if there was "[a]ny update." On that same day, Mr. Toscano sent Mr. Levinson an email stating in pertinent part:

> I appreciate your patience. HSBC is still processing the duplicate satisfaction of mortgage. It was paid off such a long time ago, they had to do 'research'. Should be available soon. Maybe 7-10 days longer.

(Davi Decl. Ex. 10, ECF No. 28-10.)

On December 8, 2017, Mr. Toscano sent Mr. Levinson an email stating in pertinent part:

> I am advised that I will have the duplicate original Satisfaction of Mortgage on Tuesday. Please send me a final set of documents for signature by my Client.

(Davi Decl. Ex. 11, ECF No. 28-11.)

On December 8, 2017, Mr. Levinson sent Mr. Toscano an email responding to Mr. Toscano's December 8, 2017 email, and stating in pertinent part:

4

> We need a current W-9 form for whoever you want the settlement check made payable to. Is that your firm?

(Davi Decl. Ex. 12, ECF No. 28-12.)

On December 8, 2017, Mr. Toscano sent Mr. Levinson an email responding to Mr. Levinson's December 8, 2018 email, and stating in pertinent part: "Yes, please see attached." On December 19, 2017, Mr. Davi sent Mr. Toscano an email responding to Mr. Toscano's December 8, 2017 email, attaching Ms. Nguyen's November 12, 2017 with attachments (*see* Davi Decl. Ex. 4), and stating in pertinent part:

> Did you get the duplicate original Satisfaction of Mortgage?
>
> Also, attached is the last email that I have from Diep with the draft easement grant. Is this now final and ready for execution? If so, when can we expect to receive a fully executed copy?
>
> I'm on vacation next week and I'd like to get this wrapped up before I leave the office on Friday.

(Davi Decl. Ex. 14, ECF No. 28-14.)

On December 20, 2017, Mr. Toscano sent Mr. Davi an email responding to Mr. Davi's December 19, 2017 email, attaching a copy of the unrecorded satisfaction of mortgage, and stating in pertinent part:

> Satisfaction is attached. We're just waiting for the recorded version. To follow shortly. We are checking with the Westchester Clerk's office daily.

(Davi Decl. Ex. 15, ECF No. 28-15.)

On January 2, 2018, Mr. Toscano sent Mr. Davi an email responding to Mr. Davi's December 19, 2017 email, attaching a copy of the recorded satisfaction of mortgage, and stating in pertinent part:

> Attached is the recorded Satisfaction of Mortgage. *We are ready to proceed*. Please send me the final form Easement, and let me know how many counterparts you will

need signed. Then, please let me know when we can exchange the wire transfer for the executed originals.

(Davi Decl. Ex. 16, ECF No. 28-16) (emphasis added.)

On January 4, 2018, Mr. Toscano sent Mr. Davi an email responding to Mr. Davi's December 19, 2017 email, and stating in pertinent part:

> The current draft of the easement reflects an easement under "unimproved land". It is not. The easement is under a land improved by an asphalt driveway/parking area. This is shown on the survey that you sent, so it appears ConEd staff is aware of this fact. Please send us a revised easement, reflecting this fact.

(Davi Decl. Ex. 17, ECF No. 28-17.)

On January 5, 2018, Mr. Davi sent Mr. Toscano an email responding to Mr. Toscano's January 4, 2018 email, and stating in pertinent part:

> The draft easement refers to an "asphalt driveway," not to "unimproved land." Can you point me to the specific language to which you are referring?
>
> Also, please provide us with Mr. Cantor's address and social security number so that we can prepare the execution version of the easement grant and the transfer tax forms. Once finalized, I will email them to you. We would like 2 originals of the documents – one for recording and one to keep for our records. You can send us the signed documents in escrow and then upon receipt, we will send you the check.

(Davi Decl. Ex. 18, ECF No. 28-18.)

On January 7, 2018, Mr. Toscano sent Mr. Davi an email responding to Mr. Davi's January 5, 2018 email, and stating in pertinent part:

> My mistake, I sent you the correct draft, but had reviewed the 10/10 draft when providing my comments.
>
> *I will wrap this up with the Client this week.*

(Davi Decl. Ex. 19, ECF No. 28-19) (emphasis added.)

On January 9, 2018, Mr. Toscano sent Mr. Davi an email responding to Mr. Davi's January 5, 2018 email, and stating in pertinent part:

I will call you with the information you requested in a few minutes.

(Davi Decl. Ex. 20, ECF No. 28-20.)

On January 19, 2018, Mr. Davi sent Mr. Toscano an email responding to Mr. Toscano's January 7, 2018 email, attaching the final formal easement grant documents, and stating in pertinent part:

> As discussed, attached are the final documents for the easement. Please send to my attention at the address below 2 originals in escrow that will be released upon your receipt of the check that we will send you following receipt of the documents.

(Davi Decl. Ex. 21, ECF No. 28-21.)

The only difference between the attachments to Mr. Davi's January 19, 2018 email to Mr. Toscano and Ms. Nguyen's November 12, 2017 email to Mr. Toscano was the inclusion of Cantor's social security number and address in the later documents. (Davi Decl. ¶ 31, ECF No. 28.) On January 31, 2018, Mr. Toscano sent Mr. Davi an email stating in pertinent part:

> *I am going to meet with my client next week to sign everything. . . .*

(Davi Decl. Ex. 22, ECF No. 28-22) (emphasis added.)

On February 14, 2018, Mr. Davi sent Mr. Toscano an email stating in pertinent part:

> In your email below, you stated that you were going to meet with your client last week to execute the easement documents. When can we expect to receive them?

(Davi Decl. Ex. 23, ECF No. 28-23.)

On February 27, 2018, Mr. Davi sent Mr. Toscano an email stating in pertinent part:

> Where do we stand with this?

(Davi Decl. Ex. 24, ECF No. 28-24.)

On February 28, 2018, Mr. Toscano sent Mr. Davi an email stating in pertinent part:

> After several meetings, my Client will not sign the documentation. In the past few months, he has received additional guidance regarding the value of the easement. He does not believe that the amount which ConEd is offering is fair and reasonable.

7

> Please expect to hear from Mr. Cantor's new legal counsel. I will no longer be representing Mr. Cantor in further proceedings relating to this matter.

(Davi Decl. Ex. 25, ECF 28-25.)

On March 14, 2018, Con Edison commenced this action for specific performance of the Agreement. (*See* Complaint.) Cantor filed his Answer on May 16, 2018. (ECF No. 15.) In his Answer, Cantor claims that because Con Edison did not pay him the $225,000 on or before December 31, 2017, the agreement is "null and void" by its terms. (Davi Decl. Ex. 3 at 1.) Cantor also alleges four counterclaims against Con Edison: unjust enrichment, intentional infliction of emotion distress, malicious prosecution, and trespass. (*Id*. at 6–7.) In his Answer, Cantor also states "There is no fact at issue." (*Id*. at 1.)

On June 1, 2018, Con Edison met and conferred with Cantor as required by Fed.R.Civ.P. 26(f). Con Edison told Cantor that, as part of its initial disclosures, it would produce to Cantor copies of its email correspondence with Mr. Toscano between September 27, 2017 (the date of the mediation) and February 28, 2018 (the date Mr. Toscano informed Con Edison that Cantor would not sign the permanent easement documents). (*Id*. ¶ 37.) On June 7, 2018, Con Edison served Cantor with its initial disclosures, which included copies of this email correspondence as well as copies of each party's mediation statement and appraisal. (*Id*. ¶ 38.)

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," *see* Fed. R. Civ. P. 56(c)(1)(A), "which it believes

demonstrate[s] the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may support an assertion that there is no genuine dispute of a particular fact by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009); *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008); *Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "draw all rational inferences in the non-movant's favor," while reviewing the record. *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Importantly, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249; *see also Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

Critically, in an opposition to a motion for summary judgment "[s]tatements that are devoid of any specifics, but replete with conclusions" will not suffice. *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))).

When dealing with summary judgment motions in *pro se* cases, courts in this Circuit must "read the pleadings of a *pro se* plaintiff liberally and "raise the strongest arguments that they suggest" *McPherson v. Coombe*, 17 F.3d 276 (2d Cir. 1999) (*quoting Burgos v. Hopkins*, 214F.3d.787, 790 (2d. Cir. 1994). Pleadings drafted by *pro se* plaintiffs are not held to the same "stringent standards" as "formal pleadings drafted by lawyers." *Shariff v. Poole*, 689 F.Supp.2d 470, 476 (S.D.N.Y. January 20, 2010). Still, *pro se* plaintiffs cannot overcome a motion for summary judgment by simply making "bald" assertions that are unsupported by the evidence. (*Id.*)

## DISCUSSION

Con Edison's central argument is that the Agreement remains an enforceable contract. Secondly, Con Edison argues that because Cantor waived the time-of-essence clause in the Agreement, it is not null and void by the terms of the time-of-the-essence clause.

The Agreement, in relevant part, provides:

> Payment shall be made by ConEd to Cantor within a reasonable time from the date hereof, but not later than December 31, 2017, or this agreement shall then be null and void.

(*See* Agreement.) While, at surface, this clause seems to provide that the entire Agreement is null and void if Con Edison simply fails to make its payment by December 31, 2017, Con Edison argues that such a clause is germane in real estate transactions and does not require literal payment, but payment ability, which is necessarily dependent on a seller providing proof of title at the relevant time. Therefore, Con Edison makes two primary points.

10

First, Con Edison argues that Cantor failed to comply with his end of the reciprocal obligations that this clause imposes on sellers while Con Edison was ready, willing, and able to comply with its obligations, which entitled Con Edison to specific performance of the contract. Second, Con Edison argues that in continuing to negotiate the terms of the sale past the deadline in this clause, Cantor waived strict adherence to its terms. Con Edison further argues that due to Cantor's waiver of this clause, Cantor cannot posit that the contract is "null and void" because Con Edison failed to make a payment to Cantor by December 31, 2017.

**I. Con Edison Was Ready, Willing, and Able to Pay Cantor by the Imposed Deadline**

"To obtain summary judgment for specific performance of a real estate contract, the plaintiff must demonstrate that it substantially performed its contractual obligations and was ready, willing, and able to fulfill its remaining obligations, and that the defendant was able but unwilling to convey the property." *Primax Properties, LLC v. Monument Agency, Inc.*, 158 A.D.3d 1336 (N.Y. App. Div. 2018) (internal marks omitted). The New York Court of Appeals has held that it is an abuse of discretion for a court to deny a real estate buyer specific performance, which is a "drastic remedy" in the absence of concrete fraud, hardship, or mutual mistake. *See Da Silva v. Musso*, 53 N.Y.2d 543 (1981); *Spira v. Acceus*, 114 A.D.3d 663 (2014) ("the right to specific performance is not automatic, and a court has the discretion to deny this remedy 'where it would cause unreasonable hardship or injustice'").

Further, a provision in a real estate contract stating that the agreement is "null and void" if the closing does not take place by a certain date is known as a "time-of-the-essence clause." *See, e.g., Jannetti v. Whelan*, 131 A.D.3d 1209, 1210 (N.Y. App. Div. 2015). Under New York law, a buyer is not required to pay the purchase price by the time-of-the-essence closing date; it simply must be ready, willing, and able to close by that date. *Spira*, 114 A.D.3d at 663; *Cheemanlall v*

*Toolsee*, 17 AD3d 392, 392-393 [2005]). And a party is ready, willing, and able to close if it has liquid assets valued in excess of the contract sale price at the time of the closing. *See Bayly v. Broomfield*, 93 A.D.3d 909, 911 (2012) (citing cases).

Here, the correspondence that Con Edison submitted shows that it was, at all relevant times, ready, willing, and able to pay Cantor the $225,000 that the parties had agreed upon at their mediation. (*See, e.g.*, Davi Dec. Exs. 7, 9, 12, 13, 14, 15, 16, 21, 22, 23) (copious email correspondence reflecting that Con Edison was ready, willing, able, and actively attempting to complete the deal and make payment by *and* after Agreement deadline).

**II.  Cantor Reneged on his Obligations and Cannot Demand Specific Performance**

Additionally, where a seller demands strict performance as to time, as Cantor does here, he must perform all the conditions that are required to enable the buyer to perform. *See Stefanelli v. Vitale*, 223 A.D.2d 361 (1996). "However, even after time has been made of the essence, a party's right to timely performance may still be waived." *Id*. (citing *76 N. Assocs. v Theil Mgt. Corp*., 114 AD2d 948, 949 (1985)). It is well-settled in New York that an oral waiver of the time for the sale of real property will be given effect. *Id*. (citing *Bacchetta v. Conforti*, 108 Misc 2d 761).

Here, Cantor both failed to perform his end of the conditions necessary to enable Con Edison to perform its obligations, and it also waived the time of essence provision in the Agreement vis-à-vis his attorney's email communications.

The Court begins with Cantor's failure to perform his end of the conditions necessary to enable Con Edison to perform its end of the Agreement. Cantor never sent a copy of the recorded duplicate satisfaction of mortgage to Con Edison, as was required. Under the September 27, 2017 Agreement, Cantor was required to provide Con Edison with HSBC's consent to the permanent easement or a subordination agreement. (*See* Agreement ¶ 3.) Instead, Cantor chose to eliminate

12

HSBC's superior interest by providing Con Edison a recorded satisfaction of HSBC's mortgage *after* December 31, 2017, and *after* his attorney participated in a series of back and forth emails, relating that Cantor was attempting to meet the deadline but was being held up by the bank's administrative process. (*See e.g.*, Davi Dec. Exs. 6-23.)

By meeting its due diligence obligations and continuing the communications *after* the contract clause deadline, Cantor not only failed to meet the requisite conditions to trigger Con Edison's reciprocal obligation under the Agreement, but he also waived the requirement that Con Edison make a payment by that date. Cantor himself therefore abrogated the null and void provision of the clause, which could have been triggered if Con Edison had been obstinately unwilling to comply with its terms but cannot be triggered simply by Cantor's intentional and inadvertent inability to provide timely proof of his clear title to the Property, an obvious prerequisite for Con Edison to transfer its funds. *See Skyline Restoration, Inc. v. Roslyn Jane Holdings, LLC*, 95 A.D.3d 1203 (2012) (affirming district court's ruling that where buyer was ready, willing, and able to comply by closing date and seller failed to deliver a timely valid certificate of occupancy claim, the seller was in breach of the agreement, not the buyer); *Primax Properties, LLC v. Monument Agency, Inc.*, 158 A.D.3d 1336, 1337 (N.Y. App. Div. 2018) (granting plaintiff specific performance of his real estate agreement where he repeatedly indicated that he was willing, ready and able to close by the required date, and the defendant repeatedly ignored plaintiff's letters).

In addition, Cantor also waived the time-of-the-essence provision when his attorney wrote to Con Edison: "We are ready to proceed" after the December 31, 2017 deadline. (*See* Davi Dec. Ex. 16) (email dated January 2, 2018 stating: "Attached is the recorded Satisfaction of Mortgage. We are ready to proceed. Please send me the final form Easement, and let me know many

counterparts you will need signed. Then, please let me know when we can exchange the wire transfer for the executed originals.") Cantor's attorney continued to represent the same well into January. For example, on January 7, 2018, he wrote to Con Edison: "I will wrap this up with the Client this week." (Davi Decl. Ex. 19.) And on January 31, 2018, he wrote to Con Edison: "I am going to meet with my client next week to sign everything. . . ." (Davi Decl. Ex. 22.)

The instant case is similar to *Stefanelli*, 223 A.D.2d 361, where the First Department ruled that the plaintiff was entitled to specific performance of the real estate contract. There, too, the Court explained that the Defendants (seller) had waived the time-of-the-essence provision when it issued the statement "[c]lean up violations so that we can proceed to a closing—Or give up—Return monies in escrow." *Id*. The Court explained that because the Defendants' statement waived the time-of-essence provision, while Plaintiff was ready, willing, and able to proceed with the sale at the relevant time, "defendants failed to demonstrate that nonperformance was justified." *Id*.

Here, too, Con Edison has shown that it was ready, willing, and able to proceed with carrying out its terms of the Agreement. Cantor's statements after the December 31, 2017 deadline constitute a waiver of the timeliness provision of the Agreement. Therefore, Con Edison is entitled to specific performance of the Agreement.

### III. Cantor's Counterclaims are Abandoned and Dismissed

Cantor raised four counterclaims against Con Edison, including: unjust enrichment, intentional infliction of emotional distress, malicious prosecution, and trespass. As Con Edison noted in its brief, there is no triable fact related to any of these four claims.

Beginning with unjust enrichment, as Con Edison correctly notes, where there is a valid and enforceable agreement governing the subject matter of a party's claims, that party may not recover under an unjust enrichment theory. "The theory of unjust enrichment lies as a quasi-

14

contract claim. It is an obligation the law creates in the absence of any agreement." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586–87 (2d Cir. 2006) (citing *Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y.2005)). Here, while Cantor claims that Con Edison was unjustly enriched by using his property since November 15, 2016 without providing him compensation, the Court has already found that the September 27, 2017 Agreement is a valid and enforceable agreement, which governs Con Edison's continued use of Cantor's property since November 15, 2016. Cantor has offered no argument or proof in rebuttal to this claim. Accordingly, this claim is dismissed with prejudice.

Turning to Cantor's second counterclaim, intentional infliction of emotional distress ("IIED"), the Court agrees with Con Edison, that Cantor has failed to adduce proof to support the necessary elements. Most notably, the first element of an IIED claim is extreme and outrageous conduct. *See Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). Such "conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*; *Cuellar v. Love*, No. 11-CV-3632 (NSR), 2014 WL 1486458 (S.D.N.Y. Apr. 11, 2014). This requirement is "rigorous, and difficult to satisfy." *Howell,* 81 N.Y. 2d at 122.

In his counterclaim statement, Cantor alleged, *inter alia*, that:

- Plaintiff threatened defendant with confiscation and condemnation of his property unless he entered into a negotiation.

- Plaintiff confiscated use of defendant's property by unlawfully utilizing defendant's property without any compensation to defendant from November 15, 2016 to this day.

- Plaintiff's use of defendant's property in violation of the easement and law without compensation unlawfully compelled defendant to participate in a so called "mediation" against defendant's will.

- At the alleged "mediation" as termed by plaintiff, plaintiff arrived with five attorneys and threatened confiscation and condemnation of defendant's property during said "mediation."

- Plaintiff engaged in intimidation, coercion and threats to defendant's financial capacity through a course of conduct threatening loss of a significant part of defendant's financial portfolio. Defendant was coerced into a negotiation process instituted by fear and oppressive conduct of plaintiff.

(*See* Answer at 6.)

Despite such lofty claims, Cantor has not offered one iota of proof to show that Con Edison, at any point in dealing with Cantor, was unreasonable, let alone outrageous. Cantor has not produced one communication that shows an indicium of coercion or intimidation. On the other hand, Con Edison has adduced abundant proof showing that it engaged in normal business correspondence throughout the process of negotiating the easement from Cantor. Accordingly, this claim is dismissed with prejudice.

Turning to Cantor's third counterclaim, which is for malicious prosecution, this claim too fails as a matter of law. As Con Edison notes, "[a] cause of action sounding in malicious prosecution cannot be interposed as a counterclaim in the very civil action that was allegedly instituted wrongfully." *Sasso v. Corniola*, 154 A.D.2d 362 (1989). Here, Cantor's malicious prosecution counterclaim is based on Con Edison's filing this lawsuit. As such, it is impermissible and is dismissed with prejudice.

Lastly, Cantor's claim for trespass also requires the Court to first find that the Agreement is null and void. Absent such a finding, Con Edison's continued presence is justified by the permission Cantor granted by entering the Agreement. Cantor cannot prove the viability of his claim by merely arguing that the Agreement is "null and void." In order to survive summary judgment, he must show proof, beyond conclusory statements, to support his position. He has not done so. All Cantor has provided, by way of proof is a series of self-serving statements in his

affidavit. This is insufficient. *See Fincher v. Depository Trust & Clearing Corp.,* No. 06 Cv. 9959, 2008 WL 4308126, at *3 (S.D.N.Y. Sept. 17, 2008) *aff'd,* 604 F.3d 712 (2d Cir.2010) ("A [nonmoving party's] self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment."). As such, his last counterclaim, too, is dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motions for Summary Judgment is GRANTED. Plaintiff is entitled to specific performance of the Agreement. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 26, enter judgment in favor of Plaintiff, close the case, mail a copy of this Opinion and Order to Defendant and show proof of service on the docket.

August 30, 2019                                                SO ORDERED:

White Plains, New York

NELSON S. ROMÁN
United States District Judge